Leath M. BROWN, III, Petitioner,

v.

Gary GRAMMER, Respondent.

No. CV 86–L–23.

United States District Court, D. Nebraska.

Jan. 5, 1987.

Joe W. Wright, Lincoln, Neb. (Court-appointed), for petitioner.

Robert M. Spire, Atty. Gen. and Lynne R. Fritz, Asst. Atty. Gen., Lincoln, Neb., for respondent.

## MEMORANDUM

LAY, Chief Judge, Sitting by special designation.

Leath M. Brown, III, an inmate at the Nebraska State Penitentiary, has submitted a petition for federal habeas corpus relief. In his petition, Brown raises only one constitutional claim—that his co-defendant, Earnest Lee Grayson, received a sentence disproportionate to that received by Brown, thereby violating Brown's eighth and fourteenth amendment rights.

## FACTS

On January 19, 1984, in North Platte, Nebraska, Earnest Grayson stole a 1982 Chevrolet Chevette and drove it to the motel where Brown and Grayson were staying. Both men had been drinking. According to Brown, he and Grayson left in the stolen car to find work in Omaha, Nebraska. Because Grayson did not have a driver's license, Brown drove, even though he knew that the car was stolen. A short time later, the Nebraska State Patrol apprehended the pair.

Brown pled guilty to one count of theft by control in excess of $1000, a Class III felony. Neb.Rev.Stat. §§ 28–511, –518 (Reissue 1985). Following a presentence investigation, the district court sentenced Brown to imprisonment for not less than five nor more than eight years in the Nebraska State Penitentiary. Grayson also pled guilty and, following a presentence investigation, was sentenced to two years probation plus sixty days in the county jail. The terms of the probation included mandatory alcohol treatment and payment of all costs of the action.

At Brown's sentencing hearing, the court took into account Brown's five previous felony convictions, his age, character, and culpability, as well as Grayson's sentence:

> The Court takes into account the fact that you entered a plea of guilty and therefore saved the State time and effort and expense of trial. Also taking into account the fact that your co-defendant was sentenced to probation just a moment ago. In light—but in light of Mr. Grayson, the co-defendant's age and in light of your age, and in light of the differences in prior records, I don't see any problem with widely disparate sentences; Mr. Grayson is 18, you're 34. Mr. Grayson took the car. You knew the car was stolen and you drove a stolen vehicle * * * And finally, Mr. Brown, your's is the worst record I've seen, either when I was a defense attorney or as a judge; five (5) felony convictions.

Tr. Arraignment and Sentence 23–24 (No. 87–26).

On direct appeal to the Nebraska Supreme Court, Brown claimed that the district court abused its discretion by not granting a sentencing concession to Brown in light of Grayson's equal guilt but lighter sentence. The Nebraska Supreme Court may reduce a defendant's sentence if it is

impermissibly disparate with the sentence of a co-defendant guilty of similar criminal activity. Neb.Rev.Stat. §§ 29–2308 (Reissue 1985); *State v. Komor,* 213 Neb. 374, 329 N.W.2d 120, 122 (1983). In these cases the court considers such factors as the relative culpability of the codefendants, prior records, age, and improper post-conviction activities. *See, e.g., State v. McKay,* 216 Neb. 934, 346 N.W.2d 423, 423 (1984); *State v. Stranghoener,* 208 Neb. 598, 304 N.W.2d 679, 683 (1981). Absent an abuse of discretion, however, the reviewing court will not disturb a sentence within statutorily prescribed limits. *State v. Clark,* 217 Neb. 417, 350 N.W.2d 521, 525 (1984). The Nebraska Supreme Court affirmed the district court's judgment without opinion. *State v. Brown,* No. 84–252, 218 Neb. XXV (1984).

**Discussion**

In his federal habeas corpus petition, Brown contends that under prevailing federal law, his sentence was disproportionate to his co-defendant's, constituting cruel and unusual punishment violative of the eighth and fourteenth amendments. He argues that he raised this issue in substance in his direct appeal and thus has now exhausted all state remedies in compliance with *Rose v. Lundy,* 455 U.S. 509, 521–22, 102 S.Ct. 1198, 1204–1205, 71 L.Ed.2d 379 (1982). *See also* 28 U.S.C. § 2254(b).

■ Before federal habeas corpus relief is available, a state prisoner must exhaust all available state remedies. In *Anderson v. Harless,* 459 U.S. 4, 103 S.Ct. 276, 74 L.Ed.2d 3 (1982), the Supreme Court explained this requirement:

> [A] federal habeas petitioner * * * [must] provide the state courts with a "fair opportunity" to apply controlling legal principles to the facts bearing upon his constitutional claim. It is not enough that all the facts necessary to support the federal claim were before the state courts * * * or that a somewhat similar state-law claim was made. In addition, the habeas petitioner must have "fairly presented" to the state courts the "substance" of his federal habeas corpus claim.

*Id.* at 6, 103 S.Ct. at 277 (citations omitted); *see also Graham v. Solem,* 728 F.2d 1533, 1535 (8th Cir.), *cert. denied,* 469 U.S. 842, 105 S.Ct. 148, 83 L.Ed.2d 86 (1984); *Nelson v. Solem,* 714 F.2d 57, 59 (8th Cir.1983); *Thomas v. Wyrick,* 622 F.2d 411, 413 (8th Cir.1980), *on remand,* 520 F.Supp. 139, *aff'd,* 687 F.2d 235 (8th Cir.1982), *cert. denied,* 459 U.S. 1175, 103 S.Ct. 824, 74 L.Ed.2d 1020 (1983).

■ A state court has had a fair opportunity to review constitutional claims if the prisoner has cited the federal Constitution, a federal case, or referred to a specific constitutional right in the state action. *Purnell v. Missouri Dept. of Corrections,* 753 F.2d 703, 706 (8th Cir.1985). The Eighth Circuit has indicated that this test may be met without specific constitutional references if the underlying facts necessarily implicate a right protected by the Constitution or the argument is well within the mainstream of constitutional litigation. *See Diamond v. Wyrick,* 757 F.2d 192, 193 (8th Cir.1985). The exhaustion requirement is not satisfied, however, merely because all the facts necessary to support the federal claim were before the state court. *Snethen v. Nix,* 736 F.2d 1241, 1244 (8th Cir.1984).

To determine whether Brown has exhausted state remedies, the court must ascertain from the record whether he presented on direct appeal at least the substance of the constitutional claim he now raises. Because the Nebraska Supreme Court affirmed the district court's judgment without opinion, this court must glean from Brown's state supreme court brief the substance of his argument. Nowhere in the brief is there any mention of the eighth or fourteenth amendments, federal cases interpreting them, or any claim that Brown's sentence was cruel and unusual because of its disparity with Grayson's sentence. Brown's argument on direct appeal to the Nebraska Supreme Court dealt solely with the excessiveness of his sentence, clearly a matter determined by state law. The court therefore finds that Brown has failed to provide the state court an opportunity to address his constitutional claim.

█ A prisoner's failure to raise the constitutional issue in state court on direct appeal precludes him from asserting his claim in a state post conviction proceeding. In *State v. Pope*, 218 Neb. 361, 355 N.W.2d 216 (1984), the Nebraska Supreme Court stated:

> The purpose of affording post conviction relief is not to permit the defendant endless appeals on matters already decided. Rather, the purpose is to correct errors of constitutional proportion which could not otherwise be raised on direct appeal, such as ineffectiveness of counsel who brought the direct appeal in the first place. We have repeatedly held that a motion for post conviction relief cannot be used as a substitute for an appeal or to secure a further review of issues already litigated. Furthermore, we have held that a petitioner in a post conviction proceeding may not raise questions which could have been raised on direct appeal unless the questions are such that they would make the judgment of conviction void or voidable under the state or federal Constitution. We have further held that matters already litigated or which *could* have been raised on direct appeal are not properly included in an action seeking post conviction relief.

*Id.* 355 N.W.2d at 217 (citations omitted); *see also Reed v. Ross*, 468 U.S. 1, 10–11, 104 S.Ct. 2901, 2907, 82 L.Ed.2d 1 (1984) (discussing significance of state procedural rules in federal habeas action); *State v. Rust*, 223 Neb. 150, 388 N.W.2d 483, 489 (1986) (following a judicial determination of post conviction claim, subsequent motions are properly dismissed except when motion shows on its face the prior unavailability of basis of relief).

█ Although it is clear that Brown has failed to provide the state court with the opportunity to address his constitutional claim, it is equally clear that under Nebraska's current procedure, it would be futile to now require Brown to attempt further state review. In a proper case, futility is an appropriate defense to a claim of failure to exhaust state remedies. *Piercy v. Black*, 801 F.2d 1075, 1078 (8th Cir.1986) (Nebraska law); *Williams v. Lockhart*, 772 F.2d 475, 477 n. 1 (8th Cir.1985) (Arkansas law). The court holds, therefore, that Brown has exhausted his state remedies so as to confer jurisdiction over his federal claim.

█ Because Brown concedes in his brief that he has failed to show cause and prejudice for his failure to comply with state procedural rules, the court is spared from engaging in a tortuous procedural analysis. After months of delay, Brown's petition must now be dismissed because he has not shown cause and prejudice for failing to abide by state procedure. The petition is dismissed without a determination once and for all of the narrow constitutional issue: Was Brown's sentence unconstitutionally disproportionate under the eighth and fourteenth amendments?

Once his petition is dismissed, Brown will undoubtedly begin the process anew in state court. This time, however, he will raise his constitutional claim in conjunction with the charge that his counsel was ineffective for failing to raise a reasonably apparent, known claim. *Reed v. Ross*, 468 U.S. 1, 16, 104 S.Ct. 2901, 2910, 82 L.Ed.2d 1 (1984). Once these issues are before the state court, it may or may not pass on their merits. Assuming the state court does not reach the merits, Brown will again seek redress in federal court, this time claiming cause and prejudice due to ineffective assistance of counsel.

All of this could be avoided were the state supreme court to allow petitioners like Brown to raise new constitutional claims in a post conviction proceeding. As it now stands in Nebraska, prisoners who have not raised constitutional claims on direct appeal are forever barred from raising them in a post conviction proceeding.

Of course, a state court is free to establish and interpret its procedural ground rules, including barring post conviction review of an issue not raised on appeal and barring multiple post conviction petitions. When a state court erects such procedural barriers, however, it effectively surrenders its power to decide constitutional issues raised by state prisoners. The constitution-

al forum shifts to the federal courts, which will address the merits if the prisoner can clear the exhaustion and cause and prejudice hurdles. *See Rose v. Lundy,* 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982) (exhaustion); *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977) (cause and prejudice). Even if a prisoner can show exhaustion of state remedies, a federal court must still determine whether the prisoner has shown cause and prejudice for any failure to abide by state procedural rules before the court ever reaches the merits. *See Murray v. Carrier,* 477 U.S. 478, 106 S.Ct. 2639, 2645–46, 91 L.Ed.2d 397 (1986).

These rules purportedly further the interests of federalism. Coupled with a narrow application of state post conviction procedures, however, they result in a greater burden on both state and federal courts than would have occurred had the state court addressed the merits in the first instance.[1] This case is a good example of such a result. Worse than the judicial inefficiency is the fact that Brown has yet to be afforded judicial review by any court of his constitutional claim.

The court intends no criticism of the Nebraska Supreme Court. Like the Nebraska Supreme Court, this court is concerned with protecting the petitioner's constitutional rights while at the same time promoting efficiency and finality in criminal proceedings. State courts should adjudicate the constitutional rights of state prisoners. A state court's prompt decision of the constitutional merits, without procedural hurdles that only lengthen and complicate matters and do nothing to deter prisoner claims, would better serve the interests of federalism, finality, and comity all the while ensuring prisoners' constitutional rights. *See Ashby v. Wyrick,* 693 F.2d 789, 794–96 (8th Cir.1982) (Lay, C.J., concurring). This is particularly true in cases where the claims are clearly without merit. The result would create a lesser litigation burden on state and federal courts alike.

Because Brown concedes that he has not shown cause and prejudice for failing to raise his constitutional claim on appeal, the court has no alternative but to dismiss his petition.

---

1. In *Murray v. Carrier,* 106 S.Ct. at 2650, and *Smith v. Murray,* 477 U.S. 527, 106 S.Ct. 2661, 2668, 91 L.Ed.2d 434 (1986), opinions filed on the same day, the Court suggested an exception to the cause and prejudice rule in appropriate cases involving fundamentally unjust incarcerations. Of course, the only way to determine whether an incarceration is fundamentally unjust is to look to the merits of the case in the first place. Another exception to the *Wainwright* procedural bars may exist wherein a federal court, pursuant to 28 U.S.C. § 1915(d), can dismiss a petition on the merits if the claim on its face is frivolous or without merit. Such an exception would serve the interests of judicial economy by avoiding another round of litigation such as will occur in this case. It seems a far more satisfactory procedure for the federal courts to go directly to the merits, dismiss the case, and finalize a criminal prosecution than it is to wander in the name of federalism through the procedural maze of cause and prejudice when the claim obviously lacks merit. The state, the state courts, and the federal courts would all be better served, as would the prisoners who are spared the Sisyphean dilemma they now face.